**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| VIVIAN LINDLEY, on behalf of herself and all others similarly situated,<br><br>　　　　　Plaintiff<br><br>　　v.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),<br><br>　　　　　Defendant. | Case No. _____<br><br>JURY TRIAL DEMANDED |

## **CLASS ACTION COMPLAINT**

Plaintiff Vivian Lindley ("Plaintiff") on behalf of herself and all others similarly situated, asserts the following against Defendant John Hancock Life Insurance Company (U.S.A.) ("John Hancock" or "Defendant"), based upon personal knowledge, where applicable, information and belief, and the investigation of counsel.

## **INTRODUCTION**

1. Plaintiff brings this class action complaint against Defendant for their (i) failure to properly secure and safeguard highly valuable, protected personally identifiable information, including without limitation, name, dates of birth, and Social Security numbers (collectively "PII"); (ii) failure to comply with industry standards to protect information systems that contain PII; (iii) unlawful disclosure of Plaintiff's and Class Members' PII; and (iv) failure to provide timely and adequate notice to Plaintiff and other Class Members that their PII had been disclosed

2. Defendant is one of the country's largest providers of insurance benefits, including life insurance.

3.      Infosys McCamish System ("IMS") is a third-party software vendor that provides insurance platform solutions. IMS provided technology services that support the life insurance operations for Defendant.

4.      Between October 29 and November 2, 2023, an unauthorized party gained access to Plaintiff's and Class Members' PII by encrypting ransomware on IMS's systems (the "Data Breach"). It was determined that the PII was subject to unauthorized access and acquisition by cybercriminals.

5.      The Data Breach affected the customers of dozens of insurance and financial services companies who utilized IMS's services.

6.      Over 6 million persons are believed to have been affected by the Data Breach, including those John Hancock customers, such as Plaintiff and Class Members.

7.      On or around February 1, 2024, IMS began publicly notifying state regulators and the approximately 6,078,263 impacted individuals that their PII had been accessed and stolen by an unauthorized third-party due to ransomware. However, notice to John Hancock customers did not occur until more than eight months later on or around August 23, 2024.

8.      As a result of Defendant's failures and lax security protocols, cybercriminals gained access to Defendant's customers' PII and were able to exfiltrate their PII, including their Social Security numbers.

9.      Defendant had a duty to safeguard and protect their customers' PII which was entrusted to it and could have prevented this theft had it limited the customer information it shared with its vendors, such as IMS, and employed reasonable measures to ensure its vendors implemented and maintained adequate data security measures and protocols in order to secure John Hancock customers' and policyholders' data.

10.     Defendant obtained Plaintiff's and Class Members' PII, maintained that sensitive data in a negligent and/or reckless manner, and failed to prevent its vendors such as IMS from doing the same.

11.     Defendant was fully aware that the insurance industry is a prime target for cyber threats. High profile insurance industry data breaches put them on notice of this fact.

12.     The Data Breach was a direct and proximate result of Defendant's failure to implement and follow basic security procedures.

13.     Because of Defendant's failures, unauthorized individuals were able to access and pilfer Plaintiff's and Class Members' PII.

14.     As a result, Plaintiff and Class Members are at substantially increased risk of future identity theft, both currently and for the indefinite future. Plaintiff's and Class Members' PII, including their Social Security numbers, that were compromised by cybercriminals in the Data Breach, is highly valuable because it is readily useable to commit fraud and identity theft.

15.     Plaintiff, on behalf of themselves and all others similarly situated, bring claims for negligence, negligence *per se*, breach of implied contract, unjust enrichment.

16.     Plaintiff seeks damages and injunctive relief requiring Defendant adopt reasonably sufficient practices to safeguard the PII in Defendant's and Defendant's vendors' custody and control; and (b) to properly evaluate, oversee, and monitor data in the custody of business associates hired by Defendant to prevent incidents like the Data Breach from recurring in the future.

17.     Given that information relating to the Data Breach, including the systems that were impacted, the configuration and design of Defendant's systems and its integration with

IMS, remain exclusively in Defendant's control, Plaintiff anticipate additional support for their claims will be uncovered following a reasonable opportunity for discovery.

<u>**JURISDICTION AND VENUE**</u>

18.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1332(d), because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative Members of the Class defined below, and a significant portion of putative Class Members are citizens of a different state than Defendant.

19.    This Court has personal jurisdiction over Defendant because Defendant is registered to do business with the Secretary of the Commonwealth of Massachusetts, Division of Corporations.

20.    This Court has personal jurisdiction over Defendant because Defendant conducts substantial business in the Commonwealth of Massachusetts and in this District and has continuous and systematic contacts with the Commonwealth.

21.    This Court also has specific personal jurisdiction over Defendant related to this action because Plaintiff's claim arises out of Defendant's contacts with insurance policyholder customers in this state and District.

22.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

<u>**PARTIES**</u>

**A. Plaintiff**

23.    Plaintiff Vivian Lindley ("Plaintiff") is a citizen and resident of the State of Texas.

24.     Plaintiff is a current life insurance policyholder of Defendant and provided and entrusted her PII to Defendant in order to receive insurance benefits.

25.     Plaintiff was notified of the Data Breach and the impact to her PII by the notice letter she received that was dated on or around August 23, 2024.

**B.  Defendant**

26.     Defendant John Hancock Life Insurance Company (U.S.A.) ("John Hancock") is life insurance company organized under the laws of the State of Michigan with its principal place of business located at 200 Berkeley Street, Boston, Massachusetts 02116. John Hancock is a wholly owned subsidiary of The Manufacturers Investment Corporation. The ultimate parent company of John Hancock is Manulife Financial Corporation, a Canadian-based, publicly traded financial services holding company.

27.     John Hancock serves customers in the United States providing insurance products and financial services, including life insurance, mutual funds, college savings, long term care, retirement plan services, and institutional investment products.

## BACKGROUND

**I.     Defendant Obtains, Collects, and Stores PII**

28.     Defendant is in complete operation, control, and supervision of its systems, and configured and designed its systems without adequate data security protections.

29.     Plaintiff and Class Members entrusted Defendant with safely securing and safeguarding their PII.

30.     Defendant did not properly verify, oversee, and supervise their entrustment of Plaintiff's and Class Members' PII.

31.     By obtaining, using, disclosing, and deriving a benefit from Plaintiff's and Class Members' PII, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII from disclosure.

32.     Plaintiff and Class Members reasonably expect that an insurance company, such as Defendant, will use the utmost care to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members also reasonably expect that an insurance company, such as Defendant, will use the utmost care in ensuring proper supervision of its vendors' data security as well.

33.     Despite the above representations, Defendant failed to prioritize data and cyber security by adopting reasonable data and cyber security measures to prevent and detect the unauthorized access to Plaintiff's and Class Members' PII.

34.     Had Defendant followed industry guidelines and adopted reasonably security measures and had Defendant ensured its vendors complied with the same, Defendant would have prevented the theft of Plaintiff's and Class Members' PII.

**II.     FTC Guidelines**

35.     Defendant is prohibited by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act") from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

36.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

37.     The FTC provided cybersecurity guidelines for businesses, advising that businesses should protect personal customer information, properly dispose of personal information that is no longer needed, encrypt information stored on networks, understand their network's vulnerabilities, and implement policies to correct any security problems.

38.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

39.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

40.     Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumer PII, or to prevent the disclosure of such information to unauthorized individuals, as reflected by the sensitive Social Security information stolen, constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

41.     Defendant was always fully aware of its obligations to protect the PII of customers because of its business of obtaining, collecting, and disclosing PII as well as collecting, storing, and using other confidential personal and financial information. Defendant was also aware of the significant repercussions that would result from its failure to do so.

## SUBSTANTIVE ALLEGATIONS

### I.    The Data Breach

42.     Between October 29 and November 2, 2023, an unauthorized party gained access to Plaintiff's and Class Members' PII by encrypting ransomware on IMS's systems. IMS discovered the ransomware attack on November 2. It was determined that the PII was subject to unauthorized access and acquisition by cybercriminals.

43.     On November 4, 2023, the LockBit ransomware gang claimed responsibility for the cyberattack, alleging that it exfiltrated 50 GB of data and encrypted 2,000 computers.

44.     The Data Breach affected the customers of dozens of insurance and financial services companies who utilized IMS's services, including Defendant.

45.     Over 6 million persons had their PII exposed as a result of the Data Breach, including those John Hancock customers, such as Plaintiff and Class Members.

46.     Despite discovering the Data Breach on or around November 2, 2023, regulators and affected persons were not notified until starting in February 2024. More importantly, John Hancock policy holders, such as Plaintiff as Class Members, were not notified until on or around August 23, 2024, leaving their PII exposed for over 6 months.

47.     Plaintiff received a notice letter via U.S. Mail dated August 23, 2024, indicating that her "name, date of birth, and Social Security number" "was subject to unauthorized access/acquisition" as a result of the Data Breach.

48.    Plaintiff's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach. Since Plaintiff's PII was exposed in the Data Breach, Plaintiff was notified that her Social Security number had been found on the dark web. Plaintiff has also received an increase in spam and suspicious phone calls and text messages.

49.    As a result of the Data Breach, Plaintiff spent significant time and effort researching the Data Breach, reviewing and monitoring her accounts for fraudulent activity, reviewing credit monitoring and scanning services, and dealing with phishing attempts and telephone calls using the information taken in the Data Breach. Specifically, following the Data Breach Plaintiff spent time scanning and received an alert that her Social Security number was found on the dark web. Plaintiff spent significant time to research the Data Breach and to confirm that her PII had been compromised in the Data Breach. Plaintiff has also seen an increase in spam and suspicious telephone calls and text messages in the wake of the Data Breach.

50.    Plaintiff places significant value in the security of her PII. Plaintiff entrusted her PII to Defendant with the understanding that Defendant would keep her information secure and employ reasonable and adequate security measures with its vendors to ensure that it would not be compromised.

51.    The Data Breach has caused Plaintiff to suffer anxiety and stress from concerns that they face an increased risk of financial fraud, identity theft and other types of monetary harm as a result of the stolen information. Plaintiff places significant value in the security of their PII.

52.    Plaintiff and Class Members suffered actual damages as a result of the failures of Defendant to adequately protect the sensitive information entrusted to them, including, without limitation, exposure of the PII on the dark web, increased spam and suspicious telephone calls and text messages, time related to monitoring their accounts for fraudulent activity, exposure to

increased and imminent risk of fraud and identity theft, the loss in value of her PII, and other

economic and non-economic harm. Plaintiff and Class Members will now be forced to expend

additional time to review her credit reports and monitor their accounts for fraud or identity theft.

53.     As a result of the Data Breach, Plaintiff has been and will continue to be at a

heightened and substantial risk of future identity theft and its attendant damages for years to

come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive

nature of the PII compromised by the Data Breach. As mentioned above, Plaintiff also continues

to suffer from anxiety and fear of a financial fraud and identity theft.

**II.     Defendant's Data Security Failures Caused the Data Breach**

54.     Up to, and including, the period when the Data Breach occurred, Defendant

breached its duties, obligations, and promises to Plaintiff and Class Members, by its failure to:

    a.   hire qualified personnel and maintain a system of accountability over data
       security, thereby knowingly allowing data security deficiencies to persist;

    b.   properly oversee and ensure the cybersecurity of its vendors who are entrusted
       with customers' PII; and

    c.   adequately safeguard customers' sensitive PII and maintain an adequate data
       security environment to reduce the risk of a data breach or unauthorized
       disclosure.

**III.    Defendant's Data Security Failures Constitute Unfair and Deceptive Practices
     and Violations of Consumers' Privacy Rights**

55.     The FTC deems the failure to employ reasonable and appropriate measures to

protect against unauthorized access to sensitive personal information an unfair act or practice

prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

56.     In 2007, the FTC published guidelines that establish reasonable data security

practices for businesses. The guidelines note that businesses should protect the personal

customer information that they keep; properly dispose of personal information that is no longer

needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security problems. The guidelines also recommend that businesses consider using an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone may be trying to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

57.     The FTC has also published a document entitled "FTC Facts for Business," which highlights the importance of having a data security plan, regularly assessing risks to computer systems, and implementing safeguards to control such risks.

58.     The FTC has issued orders against businesses that have failed to employ reasonable measures to secure sensitive personal information. These orders provide further guidance to businesses regarding their data security obligations.

59.     Prior to the Data Breach, and during the breach itself, Defendant failed to follow guidelines set forth by the FTC and actively mishandled the management of its IT security.

60.     Furthermore, by failing to have reasonable data security measures in place, Defendant engaged in an unfair act or practice within the meaning of Section 5 of the FTC Act.

**IV.    The Value of the Disclosed PII and Effects of Unauthorized Disclosure**

61.     Defendant understood the protected PII it acquires, stores, and utilizes is highly sensitive and of significant value to the owners of the PII and those who would use it for wrongful purposes.

62.     PII is a valuable commodity to identity thieves, particularly when it is aggregated in large numbers.

63.     Sensitive personal information commonly stolen in data breaches has economic value. The purpose of stealing large caches of personal data is to use it to defraud individuals or to place it for illegal sale and to profit from other criminals who buy the data and use it to commit fraud and identity theft. Indeed, cybercriminals routinely post stolen personal information on anonymous websites, making the information widely available to a criminal underworld. There is an active and robust market for this information.

64.     The forms of PII involved in this Data Breach are particularly concerning. Unlike credit or debit card numbers in a payment card data breach—which can quickly be frozen and reissued in the aftermath of a breach—unique Social Security numbers cannot be easily replaced. Even when such numbers are replaced, the process of doing so results in a major inconvenience to the subject person, requiring a wholesale review of the person's relationships with government agencies and any number of private companies in order to update the person's accounts with those entities.

65.     The Social Security Administration (''SSA") warns that the process of replacing a social security number is a difficult one that creates other types of problems, and that it will not be a panacea for the affected person:

> Keep in mind that a new number probably will not solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) likely will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number will not guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.
>
> If you receive a new Social Security Number, you should not be able to use the old number anymore.

> For some victims of identity theft, a new number actually creates
> new problems. If the old credit information is not associated with
> your new number, the absence of any credit history under the new
> number may make more difficult for you to get credit.

66.     Social security numbers allow individuals to apply for credit cards, student loans,

mortgages, and other lines of credit—among other services. Often social security numbers can be

used to obtain medical goods or services, including prescriptions. They are also used to apply for

a host of government benefits. Access to such a wide range of assets makes social security

numbers a prime target for cybercriminals and a particularly attractive form of PII to steal and

then sell.

67.     The ramifications of Defendant's failure to keep Plaintiff's and Class Members'

PII secure are long lasting and severe.

68.     To avoid detection, identity thieves often hold stolen data for months or years

before using it. Also, the sale of stolen information on the "dark web" may take months or more

to reach end-users, in part because the data is often sold in small batches as opposed to in bulk to

a single buyer. Thus, Plaintiff and Class Members must vigilantly monitor their financial

accounts *ad infinitum*.

69.     Thus, Defendant knew, or should have known, the importance of safeguarding the

PII entrusted to it and of the foreseeable consequences if its systems were breached. Defendant

failed, however, to take adequate cybersecurity measures to prevent the Data Breach from

occurring.

70.     As highly sophisticated parties that handle sensitive PII, Defendant failed to

establish and/or implement appropriate administrative, technical and/or physical safeguards to

ensure that their vendor's protected the security and confidentiality of Plaintiff's and other Class

Members' PII to protect against anticipated threats of intrusion of such information.

71.     Identity thieves use stolen PII for various types of criminal activities, such as when personal and financial is used to commit fraud or other crimes, including credit card fraud, phone or utilities fraud, bank fraud and government fraud.

72.     The PII exfiltrated in the Data Breach can also be used to commit identity theft by placing Plaintiff and Class Members at a higher risk of "phishing," "vishing," "smishing," and "pharming," which are which are other ways for cybercriminals to exploit information they already have in order to get even more personally identifying information from a person through unsolicited email, text messages, and telephone calls purportedly from a legitimate company requesting personal, financial, and/or login credentials.

73.     There is often a lag time between when fraud occurs versus when it is discovered, and also between when PII is stolen and when it is used.

74.     According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

75.     PII is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the cyber black market for years.

76.     Plaintiff and Class Members rightfully place a high value not only on their PII, but also on the privacy of that data.

77.     Thus, Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

## V.    The Data Breach Damaged Plaintiff and Class Members

78.    As a result of Defendant's deficient security measures, Plaintiff and Class Members have been harmed by the compromise of their sensitive PII, which is likely currently for sale on the dark web and through private sale to other cyber criminals and/or being used by criminals for identify theft and other fraud-related crimes.

79.    Plaintiff and Class Members face a substantial and imminent risk of fraud and identity theft as their names have now been linked with their name, dates of birth, and Social Security numbers as a result of the Data Breach. These specific types of information are associated with a high risk of fraud.

80.    Plaintiff has been damaged as a result of the Data Breach, *inter alia*, as described above, including the exposure of her Social Security number on the dark web and well as a marked increase in spam and suspicious telephone calls and text messages.

81.    Many Class Members will also incur out of pocket costs for protective measures such as identity theft protection, credit monitoring fees, credit report fees, credit freeze fees, fees for replacement cards, and similar costs related to the Data Breach.

82.    Plaintiff and Class Members also suffered a "loss of value" of their sensitive PII when it was stolen by hackers in the Data Breach. A robust market exists for stolen PII. Hackers sell PII on the dark web—an underground market for illicit activity, including the purchase of hacked PII—at specific identifiable prices. This market serves as a means to determine the loss of value to Plaintiff and Class Members.

83.    Identity thieves can also combine data stolen in the Data Breach with other information about Plaintiff and Class Members gathered from underground sources, public sources, or even Plaintiff's and Class Members' social media accounts. Thieves can use the

combined data to send highly targeted phishing telephone calls, text messages, and emails to Plaintiff and Class Members to obtain more sensitive information. Thieves can use the combined data to commit potential crimes, including opening new financial accounts in Plaintiff's and Class Members' names, taking out loans in Plaintiff's and Class Members' names, using Plaintiff's and Class Members' information to obtain government benefits, filing fraudulent tax returns using Plaintiff's and Class Members' information, obtaining Social Security numbers in Plaintiff's and Class Members' names but with another person's photograph, and giving false information to police during an arrest.

84.    Plaintiff's and Class Members also suffered "benefit of the bargain" damages. Plaintiff and Class Members overpaid for insurance services that should have been—but were not—accompanied by adequate data security. Part of the money paid by Plaintiff and Class Members to Defendant as part of their premiums were intended to be used to fund adequate data security. Plaintiff and Class Members did not get what they paid for.

85.    Plaintiff and Class Members have spent and will continue to spend substantial amounts of time monitoring their accounts for identity theft and fraud, the opening of fraudulent accounts, disputing fraudulent transactions, and reviewing their financial affairs more closely than they otherwise would have done but for the Data Breach. These efforts are burdensome and time-consuming, especially because Defendant has disclosed little information about the Data Breach, forcing customers to continue to monitor their accounts indefinitely.

86.    In the case of a data breach, merely reimbursing a consumer for a financial loss due to identity theft or fraud does not make that individual whole again, especially when that individual spent significant time monitoring their accounts and rectifying any problems that arose.

87.    A victim whose personal information has been stolen or compromised may not see the full extent of identity theft or fraud until long after the initial breach. Additionally, a victim whose personal information (including Social Security numbers) has been stolen may not become aware of charges when they are nominal, as typical fraud-prevention algorithms may not capture such charges. Those charges may be repeated, over and over again, on a victim's account.

88.    The risk of identity theft and fraud will persist for years. Identity thieves often hold stolen data for months or years before using it to avoid detection. Also, the sale of stolen information on the dark web may take months or more to reach end-users, in part because the data is often sold in small batches to various individuals rather than in bulk to a single buyer. Thus, Plaintiff and Class Members must vigilantly monitor their financial accounts *ad infinitum*.

**VI.    Defendant's Failure to Timely Notify Plaintiff and Class Members**

89.    As detailed above, IMS claims to have discovered the Data Breach on or around November 2, 2023.

90.    Defendant and/or IMS on behalf of Defendant did not notify Plaintiff and Class Members via U.S. Mail until August 23, 2024—more than eight months after the discovery of the Data Breach.

91.    This period of more than eight months could have been used by Plaintiff and Class Members to take steps to mitigate the damage caused by the Data Breach.

92.    Instead, Defendant concealed the Data Breach for more than eight months allowing the unauthorized third-party to potentially exploit Plaintiff's and Class Members' PII without any mitigation steps being taken.

17

93.    Plaintiff and Class Members were deprived of the opportunity to take any steps to prevent damage by Defendant's concealment of the Data Breach and failure to provide timely and adequate notice of the Data Breach to Plaintiff and Class Members.

## CLASS ACTION ALLEGATIONS

94.    Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (b)(3) on behalf of the following nationwide Class:

> All John Hancock customers residing in the United States whose PII was compromised in the Data Breach (the Class").

95.    Excluded from the Class is Defendant, its subsidiaries and affiliates, its officers, directors and members of their immediate families and any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

96.    Plaintiff reserves the right to modify, expand or amend the above Class definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

97.    Certification of Plaintiff's claims for class-wide treatment are appropriate because all elements of Fed. R. Civ. P. 23(a) and (b)(2)-(3) are satisfied. Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

98.    **Numerosity**. All requirements of Fed. R. Civ. P. 23(a)(1) are satisfied. The Members of the Class are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. While Plaintiff is informed and believes that there are likely thousands of Members of the Class, the precise number of Class Members is unknown to

Plaintiff. However, regulatory reporting from the Maine Office of Attorney General indicates there are approximately 6,078,263 affected by the larger IMS breach, which included John Hancock customers.

99.    Class Members may be identified through objective means. Class Members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

100.    **Commonality and Predominance**. All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied. This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including, without limitation:

a.    Whether Defendant engaged in active misfeasance and misconduct alleged herein;

b.    Whether Defendant owed a duty to Class Members to safeguard their sensitive PII;

c.    Whether Defendant failed to implement and maintain reasonable security procedures and monitoring practices appropriate for the nature and scope of the information compromised in the Data Breach;

d.    Whether Defendant breached its duty to Class Members to safeguard their sensitive PII;

e.    Whether Defendant's conduct violated the FTC Act;

f.    Whether Defendant's data security systems and monitoring processes prior to and during the Data Breach complied with applicable law and were consistent with industry standards;

g.    Whether Defendant knew or should have known IMS's network and systems were susceptible to a data breach;

h.    Whether Defendant was negligent in failing to adequately monitor and audit the data security systems of their vendor, IMS;

    i.    Whether Defendant breached implied contracts with Plaintiff and Class Members;

    j.    Whether Defendant was unjustly enriched by unlawfully retaining a benefit conferred upon them by Plaintiff and Class Members;

    k.    Whether Plaintiff and Class Members suffered legally cognizable damages as a result of the Data Breach;

    l.    Whether Defendant's failure to provide adequate security proximately caused Plaintiff's and Class Members' injuries;

    m.    Whether Defendant owed a duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

    n.    Whether Defendant failed to notify Plaintiff and Class Members as soon as practicable and without delay after the Data Breach was discovered;

    o.    Whether Defendant's delay in informing Plaintiff and Class Members of the Data Breach was unreasonable; and

    p.    Whether Plaintiff and Class Members are entitled to declaratory and injunctive relief.

101.    **Typicality.** All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied. Plaintiff's claims are typical of the claims of all Class Members because Plaintiff, like other Class Members, suffered theft of their sensitive personal information in the Data Breach.

102.    **Adequacy of Representation.** All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied. Plaintiff is an adequate Class representative because they are a Member of the Class and their interests do not conflict with the interests of other Class Members that they seek to represent. Plaintiff is committed to pursuing this matter for the Class with the Class's collective best interest in mind. Plaintiff has retained counsel competent and experienced in complex class action litigation of this type and Plaintiff intends to prosecute this action vigorously. Plaintiff and their counsel will fairly and adequately protect the Class's interests.

103.    **Predominance and Superiority.** All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. As described above, common issues of law or fact predominate over individual issues.

Resolution of those common issues in Plaintiff's case will also resolve them for the Class's claims. In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Members of the Class to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

104.    **Cohesiveness**. All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied. Defendant has acted, or refused to act, on grounds generally applicable to the Class such that final declaratory or injunctive relief is appropriate.

## CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE

105.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 104, as if fully set forth herein.

106.    Defendant obtained Plaintiff's and Class Members' PII from Plaintiff and Class Members.

107.    Defendant required Plaintiff and Class Members to provide their PII in order to obtain Defendant's services, specifically insurance and related benefits. Defendant collected,

21

maintained, and stored Plaintiff's and Class Members' PII and used it as well as shared and transmitted it to IMS for commercial gain.

108.    By collecting and maintaining sensitive PII, Defendant had a common law duty of care to use reasonable means to secure and safeguard the sensitive PII and to prevent disclosure of the information to unauthorized individuals. Defendant's duty included a responsibility to implement processes by which it could detect a data breach of this type and magnitude in a timely manner.

109.    Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, securing, safeguarding, storing, and protecting Plaintiff's and Class Members' PII in its control from being compromised, lost, stolen accessed and misused by unauthorized persons.

110.    Defendant's duty included a responsibility to implement processes by which it could either detect a data breach of this type and magnitude in a timely manner or audit and verify the computer, network, and data security measures of IMS, which Defendant allowed to access Plaintiff's and Class Members' PII.

111.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with the various industry standards, statutory requirements, regulations, and other notices described above.

112.    Defendant's duty of care also arose as a result of the special relationship that existed between Defendant and Plaintiff and Class Members. The special relationship arose because Plaintiff and Class Members entrusted Defendant with their confidential data as part of the insurance processes. Only Defendant was in a position to ensure that their contractual

partners had sufficient safeguards to protect against the foreseeable risk that a data breach could occur and would result in substantial harm to Plaintiff and Class Members.

113.    Defendant's duties also arose under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect personal and confidential information. Various FTC publications and data security breach orders further form the basis of Defendant's duty. In addition, several individual states have enacted statutes based upon the FTC Act that also created a duty.

114.    Defendant was subject to an "independent duty" untethered to any contract between Plaintiff and Class Members and Defendant.

115.    Defendant owed Plaintiff and Class Members a duty to notify them within a reasonable time frame of any breach to their PII. Defendant also owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. This duty is necessary for Plaintiff and Class Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps in an effort to mitigate the fallout of the Data Breach.

116.    Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from its inadequate security protocols. After all, Defendant actively sought and obtained the PII of Plaintiff and Class Members.

117.    Given the vast amount of highly valuable PII that Defendant aggregates and makes available to third parties, like IMS, the risk that unauthorized persons would attempt to gain access to Plaintiff's and Class Members' PII and misuse it was foreseeable.

23

118.    Defendant knew or should have known the importance of exercising reasonable care in handling the PII entrusted to it, including when allowing third parties like IMS access to Plaintiff's and Class Members' sensitive PII.

119.    Given the nature of Defendant's business, the sensitivity and value of the PII they maintain, and the resources at their disposal, Defendant should have identified and foreseen that the third parties they share information with could have vulnerabilities in their systems and prevented the dissemination of Plaintiff's and Class Members' PII.

120.    It was or should have been reasonably foreseeable to Defendant that their failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII by failing to ensure that the third parties their share PII with design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class members' PII to unauthorized individuals.

121.    It was also foreseeable that Defendant's failure to provide timely and adequate notice of the Data Breach would result in injury to Plaintiff and Class Members.

122.    Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect its customers' sensitive PII, including Plaintiff and Class Members.

123.    Defendant breached their duties, and thus were negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' PII. And but for Defendant's negligence, Plaintiff and Class Members would not have been injured. The specific negligent acts and omissions committed by Defendant include, but are not limited to:

a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' PII;

b.  Failing to comply with—and thus violating—FTC Act and its regulations;

c.  Failing to adequately monitor the security of their vendor's networks and systems;

d.  Failing to have in place mitigation policies and procedures;

e.  Allowing unauthorized access to Plaintiff's and Class Members' PII;

f.  Failing to detect in a timely manner that Plaintiff and Class Members' PII had been compromised; and

g.  Failing to timely notify Plaintiff and Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

124.    It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff's and Class Members' PII would result in injury to Plaintiff and Class Members. Furthermore, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the industry. It was therefore foreseeable that the failure to adequately safeguard Plaintiff and Class Members' PII would result in one or more types of injuries to Plaintiff and Class Members.

125.    Defendant breached its duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII by failing to monitor, audit, evaluate, and ensure that the third parties it shares PII with design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems sufficient to safeguard and protect PII entrusted to them—including Plaintiff's and Class members' PII. Defendant also

failed to provide timely and adequately detailed notice of the Data Breach and that Plaintiff's and Class Members' PII had been compromised.

126.    Plaintiff and Class Members had and have no ability to protect their PII that was, or remains, in Defendant's possession and control.

127.    But for Defendant's negligent conduct or breach of the above-described duties, Plaintiff's and Class Members' PII would not have been compromised. The PII of Plaintiff and the Class was accessed and stolen as the proximate result of Defendant's failure to exercise reasonable care in safeguarding, securing, and protecting such PII by, *inter alia*, monitoring, auditing, and ensuring that third parties it contracts with and shares PII will adopt, implement, and maintain appropriate security measures and otherwise comply with application industry standards, regulations, and law.

128.    Defendant's failure to take proper security measures and to monitor, audit, and ensure that their third-party vendors took proper security measures to protect sensitive PII of Plaintiff and Class Members created conditions conducive to a foreseeable, intentional criminal act, namely the unauthorized access of Plaintiff's and Class Members' PII.

129.    Neither Plaintiff nor the other Class Members contributed to the Data Breach and subsequent misuse of their PII.

130.    It was foreseeable to Defendant that a failure to use reasonable measures to protect its customers' sensitive PII could result in injury to consumers. Further, actual and attempted breaches of data security were reasonably foreseeable to Defendant given the known frequency of data breaches and various warnings from industry experts.

131.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have been injured as alleged herein. Plaintiff and Class Members are entitled to

damages, including actual, compensatory, punitive, and nominal damages suffered because of the Data Breach in an amount to be proven at trial.

132.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) free and adequate credit monitoring and identity theft insurance to all Class Members for the remainder of their lives.

**COUNT II**
**NEGLIGENCE *PER SE***

133.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 104, as if fully set forth herein.

134.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by companies such as Defendant for failing to use reasonable measures to protect sensitive PII.

135.    Various FTC publications and orders also form the basis of Defendant's duty.

136.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with the industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and disclosed and the foreseeable consequences of a data breach.

137.    Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

138.    Moreover, the harm that has occurred is the type of harm that the FTC Act was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and

avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class Members.

139.     As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have been injured as alleged herein. Plaintiff and Class Members are entitled to damages, including actual, compensatory, punitive, and nominal damages suffered because of the Data Breach in an amount to be proven at trial.

140.     Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

141.     Plaintiff's and Class Members are also entitled to injunctive relief requiring Defendant to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free and adequate credit monitoring and identity theft insurance to all Class Members for the remainder of their lives.

## COUNT III
## BREACH OF IMPLIED CONTRACT

142.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 104, as if fully set forth herein.

143.     When Plaintiff and Class Members provided their sensitive PII to Defendant in exchange for Defendant's insurance services, they entered into implied contracts with Defendant under which Defendant agreed to take reasonable steps to protect their sensitive PII.

144.     Defendant solicited and invited Plaintiff and Class Members to provide their sensitive PII as part of their regular business practices.

145.     Defendant requires Plaintiff and Class Members to provide sensitive PIII including Social Security numbers, to obtain and maintain Defendant's services.

146.    Plaintiff and Class Members accepted Defendant's offers and provided their sensitive PII to Defendant.

147.    Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws, regulations, and industry standards when they entered into the contracts with Defendant.

148.    Plaintiff and Class Members paid money (directly and/or indirectly) to Defendant and Plaintiff and Class Members therefore reasonably believed and expected that Defendant would use part of those funds to obtain and oversee adequate data security, including of its vendors. Defendant failed to do so.

149.    Plaintiff and Class Members would not have provided their sensitive PII to Defendant in the absence of Defendant's implied promise to keep their sensitive PII reasonably secure.

150.    Plaintiff and Class Members fully performed their obligations under the implied contracts by paying money in the forms of premiums to Defendant.

151.    Defendant breached its implied contracts with Plaintiff and Class Members by failing to verify, monitor, and audit IMS to ensure it had adequate measures to safeguard, secure, and protect Plaintiff's and Class Members' PII.

152.    Defendant breached its implied contracts with Plaintiff and Class Members by failing to safeguard and protect their PII and by failing to provide timely and accurate notice to them that their PII was compromised as a result of the Data Breach.

153.    As a direct and proximate result of Defendant's breaches of the implied contracts, Plaintiff and Class Members have been injured as alleged herein. Plaintiff and Class Members

are entitled to damages, including actual, compensatory, punitive, and nominal damages suffered because of the Data Breach in an amount to be proven at trial.

154.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free and adequate credit monitoring and identity theft insurance to all Class Members for the remainder of their lives.

## COUNT IV
## UNJUST ENRICHMENT

155.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 104, as if fully set forth herein.

156.    Plaintiff and Class Members conferred a monetary benefit upon Defendant in the form of monies paid while utilizing Defendant's insurance services.

157.    The monies Plaintiff and Class Members paid to Defendant were supposed to be used by Defendant, in part, to pay for and oversee adequate data privacy infrastructure, practices, and procedures.

158.    Plaintiff and Class Members engaged Defendant for insurance and other benefits and provided Defendant with, and allowed Defendant to collect, their PII on the mistaken belief that Defendant complied with their duty to safeguard and protect insureds' PII. Putting their short-term profit ahead of safeguarding PII, and unbeknownst to Plaintiff and Class Members, Defendant knowingly sacrificed security in favor of collecting moneys Defendant believed they were owed. Defendant knew that the manner in which they maintained and transmitted policyholder's and customers' PII violated their fundamental duties to Plaintiff and Class

Members by disregarding industry-standard security protocols to ensure confidential information was securely transmitted and stored.

159.    Defendant had within their exclusive knowledge at all relevant times the fact that their vendors failed to implement adequate security measures to keep patients' and insureds' PII secure. This information was not available to Plaintiff, Class Members, or the public at large.

160.    Defendant also knew that Plaintiff and Class Members expected that their information would be kept secure against known security risks and that the security protocols of any vendors used by Defendant would be thoroughly vetted before they received Plaintiff's and Class Members' PII. And based on this expectation and trust, Defendant knew that Plaintiff and Class Members would not have disclosed their sensitive information to them and would have chosen different providers for services.

161.    Plaintiff and Class Members did not expect that Defendant would store or transmit their PII insecurely or engage another benefits provider, IMS, that employed substantially deficient security protocols and would store sensitive PII.

162.    Plaintiff and Class Members conferred a monetary benefit on Defendant by paying money for insurance benefits and other services, a portion of which was intended to have been used by Defendant for data security measures to ensure the security of Plaintiff's and Class Members' PII, including by monitoring and auditing IMS's networks and data security measures. Plaintiff and Class Members further conferred a benefit on Defendant by entrusting their PII to Defendant from which Defendant derived profits.

163.    Defendant enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant

instead calculated to avoid their data security obligations at the expense of Plaintiff and Class Members by avoiding their network and data security monitoring and auditing measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to ensure adequate security.

164.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data security measures that are mandated by industry standards, including monitoring and auditing IMS's network and data security measures.

165.    Defendant acquired the monetary benefit, PII through inequitable means in that Defendant failed to disclose the inadequate security practices, previously alleged, and failed to ensure IMS maintained adequate data security measures.

166.    Had Plaintiff and Class Members known about Defendant's practice of sharing their PII with vendors who were unequipped to protect it and insecurely transmitting sensitive PII that had no legitimate business need for it, Plaintiff and Class Members would not have engaged Defendant to provide insurance benefits and other related services and would never have provided Defendant with their PII.

167.    By withholding these material facts, Defendant put their own interests ahead of their insureds' interests and benefitted themselves to the detriment of Plaintiff and Class Members.

168.    As a result of its conduct as alleged herein, Defendant sold more insurance and other services than they otherwise would have and were able to charge Plaintiff and Class Members when they otherwise could not have. Defendant were unjustly enriched by charging for and collecting those benefits and other services to the detriment of Plaintiff and Class Members.

169.    Defendant's defective security and their unfair and deceptive conduct have, among other things, caused Plaintiff and Class Members to unfairly incur substantial time and/or costs to mitigate and monitor the use of their private PII.

170.    Plaintiff and Class Members have no adequate remedy at law.

171.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members suffered—and will continue to suffer—other forms of injury and/or harm.

172.    Defendant's conduct caused Plaintiff and Class Members to suffer damages as alleged herein.

173.    Defendant's conduct caused Plaintiff and Class Members to suffer damages in an amount equal to the difference in value between what they paid for (Defendant's services made with adequate data privacy and security practices and procedures), and what they actually received (Defendant's services without adequate data privacy and security practices and procedures).

174.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by it as a result of the conduct and Data Breach alleged herein.

## COUNT V
## DECLARATORY AND INJUNCTIVE RELIEF

175.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 104, as if fully set forth herein.

176.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the statutes described in this Complaint.

177.    An actual controversy has arisen in the wake of the Data Breach regarding Defendant's present and prospective common law and statutory duties to reasonably safeguard its customers' sensitive PII and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches. Plaintiff alleges that Defendant's data security practices remain inadequate.

178.    Plaintiff and Class Members continue to suffer injury as a result of the compromise of their sensitive PII and remain at imminent risk that further compromises of their PII will occur in the future.

179.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.    Defendant continues to owe a legal duty to secure members' PII and to timely notify members of a data breach under the common law and Section 5 of the FTC Act; and

b.    Defendant continues to breach this legal duty by failing to employ reasonable measures to secure members' PII, including to monitor, oversee, and audit their vendor compliance with applicable industry standards, laws, and regulations.

180.    The Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to protect Defendant's customers' sensitive PII.

181.    If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury, for which they lack an adequate legal remedy. The threat of another data breach is real, immediate, and substantial. If another breach occurs, Plaintiff and Class Members will not have

an adequate remedy at law, because not all of the resulting injuries are readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

182.    The hardship to Plaintiff and Class Members if an injunction does not issue greatly exceeds the hardship to Defendant if an injunction is issued. If another data breach occurs, Plaintiff and Class Members will likely be subjected to substantial identify theft and other damages. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

183.    Issuance of the requested injunction will serve the public interest by preventing another data breach concerning Defendant's customers' PII, thus eliminating the additional injuries that would result to Plaintiff and the thousands of consumers whose confidential information would be further compromised.

## **REQUEST FOR RELIEF**

Plaintiff, on behalf of herself and all others similarly situated, requests that the Court enter judgment against Defendant including the following:

A.    Determining that this matter may proceed as a class action and certifying the Class asserted herein;

B.    Appointing Plaintiff as representative of the applicable Class and appointing Plaintiff's counsel as Class Counsel;

C.    An award to Plaintiff and the Classes of actual, compensatory, punitive, and nominal damages as set forth above;

D.    Ordering injunctive relief requiring Defendant to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual

audits of those systems; (iii) provide lifetime free credit monitoring and identity theft insurance to all Class Members; (iv) timely notify customers of any future data breaches;

E.      Entering a declaratory judgment stating that Defendant owes a legal duty to secure its customers' sensitive PII, to timely notify customers of any data breach, and to establish and implement data security measures that are adequate to secure sensitive personal information;

F.      An award of attorneys' fees, costs, and expenses, as provided by law or equity;

G.      An award of pre-judgment and post-judgment interest, as provided by law or equity; and

H.      Such other relief as the Court may allow.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Dated: September 18, 2024

Respectfully submitted,

/s/ Nicole Maruzzi

Christian Levis (*pro hac vice* forthcoming)
Peter Demato (*pro hac vice* forthcoming)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
Email: clevis@lowey.com
Email: pdemato@lowey.com

Nicole Maruzzi (BBO# 696088)
Anthony M. Christina (*pro hac vice* forthcoming)
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428

Tel: (215) 399-4770
Email: nmaruzzi@lowey.com
Email: achristina@lowey.com

*Counsel for Plaintiff Vivian Lindley
and the Proposed Class*